158 F.Supp.2d 209 (2001)
Keith R. BRESSETTE, Ernest R. Carreiro, Carlo Antonino, Leeann Paradis, and Priscilla A. Lewis, Plaintiffs,
v.
PLANNING AND ZONING COMMISSION OF THE TOWN OF NORTH STONINGTON, SBA, INC., Sprint Spectrum, LP (Sprint PCS), and North Stonington Volunteer Fire Co., Inc., Defendants.
No. 399CV1213(GLG).
United States District Court, D. Connecticut.
August 1, 2001.
*210 William H. Hescock, North Stonington, CT, for Plaintiffs.
Elias A. Alexiades, John W. Knuff, Hurwitz & Sagarin, Milford, CT, for SBA, Inc.
Peter F. Stuart, Frank N. Eppinger, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, for North Stonington Volunteer Co. Inc.
Thomas B. Wilson, Suisma, Shapiro, Wool, Brennan, Gray & Greenberg, New London, CT, for Town of North Stonington Planning & Zoning Com'n.

MEMORANDUM OF DECISION
GOETTEL, District Judge.
The parties have cross-moved for summary judgment [Doc. # 50 & Doc. # 52]. For the reasons set forth below, defendants' motion will be granted and plaintiffs' motion will be denied.

Background
This action arises out of this Court's decision in Sprint Spectrum L.P. v. Town of North Stonington, 12 F.Supp.2d 247 (D.Conn.1998). There the second-named defendant in this action, Sprint Spectrum, L.P., ("Sprint") had sued the first-named defendant, the Planning & Zoning Commission of North Stonington (the "Commission"), to compel the issuance of a permit to construct a wireless personal communications service tower (a "monopole" or "telecommunication tower") at the Pitcher Mountain Site in North Stonington, Connecticut. The Commission had rejected the application on a number of grounds, all but one of which were rejected by this Court. That issue was the visual impact of the proposed monopole. We held that
[t]here was substantial evidence in the record to support the Commission's conclusion that the Pitcher Mountain Site would raise more significant visual concerns than a cell site at the Fire House.
*211 12 F.Supp.2d at 255. We therefore denied Sprint's motion for summary judgment without prejudice to renewal if a lease did not result with the Fire Department for the placement of a monopole at the Fire House or if the Commission denied its application for placement of a monopole at that location. Id. at 257.
Subsequently, a lease was executed with the Fire Department, and the Commission approved the zoning application. Some local residents then commenced this action in State Court challenging the Zoning Commission's approval of the application. The action was removed to federal court because of its connection with the still pending action cited above and because of an allegation in the complaint that the approval violated 7 U.S.C. §§ 1010-1012.[1] (No motion for remand was filed and the jurisdiction of this Court has not been challenged.)

The Facts
The following facts have been admitted by the parties:
1. Plaintiff Keith R. Bressette is an owner of real property that is within a radius of one hundred feet of a portion of the land involved in the Commission's decision appealed from.
2. Defendant SBA, Inc., ("SBA") is a corporation in the business of providing build-to-suit, site development and construction services to the wireless telecommunications industry, allowing providers to place their antennas accordingly throughout their networks to provide wireless communications to their customers.
3. Defendant Sprint is a major telecommunications company that is a participant in the Personal Communications Service ("PCS") market providing consumers with a variety of telecommunication services.
4. Sprint has obtained licenses from the Federal Communications Commission which enable Sprint to provide seamless PCS wireless telecommunication services in areas throughout the country, including Connecticut.
5. Defendant North Stonington Planning & Zoning Commission ("Commission") was and currently is the agency empowered under the Connecticut General Statutes to perform the function of a zoning commission in the Town of North Stonington.
6. The Commission has the authority to approve special permit and site plan applications including applications for wireless telecommunication facilities.
7. Defendant, the North Stonington Volunteer Fire Company, Inc., ("Fire Department") is the sole owner of the property located at 267 Norwich-Westerly Road, which is located within an R-40 residential zoning district. The Fire Department is a non-profit corporation organized under the laws of the State of Connecticut.
8. The quitclaim deed, identified as item D.26 in the Return of Record, is a true and correct copy of the deed by which the North Stonington Volunteer Fire Department holds title.
9. The Fire Department's property has been continuously occupied and used as a Fire House since the adoption of zoning regulations by the Town of North Stonington in 1964.
10. The Town of North Stonington has not adopted an ordinance or other legislation exempting municipal property from the North Stonington Zoning Regulations.
*212 11. Approximately 95% of the land in North Stonington is residentially zoned.
12. It was determined by Sprint's radio frequency engineering group that Sprint had a significant signal coverage gap in the Town of North Stonington.
13. On August 13, 1997, Sprint applied to the defendant Commission for a special permit to construct a facility on a lot off of Reutemann Road, but the Commission, by unanimous vote, denied the application on December 4, 1997, and that denial has been appealed by Sprint in the action described above. See Sprint Spectrum, L.P. v. Town of North Stonington, 12 F.Supp.2d 247.
14. In an attempt to remedy Sprint's existing coverage gap in North Stonington, Sprint and SBA sought to locate a facility (the "Facility") on property owned by the Fire Department.
15. The Facility was designed to provide Sprint with approximately 3 miles of coverage along Route 2, 2.5 miles of coverage along Route 201, 2.5 miles of coverage along Route 184, and satisfactory coverage for customers in the downtown and surrounding residential areas.
16. On or about March 4, 1999, SBA and Sprint applied for a special permit to the defendant Commission for the construction of the Facility on the Fire Department Site, pursuant to Section 724 of the Regulations.
17. An earlier special permit application for the Facility ("Prior Application"), which the Commission had considered during a public hearing, was withdrawn due to a procedural defect.
18. The Facility is capable of supporting the antennas of several providers, including those of Omnipoint Communications, Inc., which had indicated its intent to colocate on the Facility.
19. On April 1, 1999, the defendant Commission held a Workshop Meeting at which the Commission reviewed the Application and found it acceptable for a public hearing.
20. On April 8, 1999, the defendant Commission held a public hearing on the Application.
21. At the April 8, 1999 hearing, written testimony was submitted by SBA and Sprint to establish that all of the requirements of Section 724 of the North Stonington Zoning Regulations pertaining to special permit approvals for wireless communications facilities were fully met.
22. At the April 8, 1999 hearing, it was established that the Application was substantially identical to the Prior Application that the Commission had reviewed and that the only change was the addition of Omnipoint as an intended tenant on the Facility.
23. At the conclusion of the April 8, 1999 hearing, the Commission closed the public hearing and decided to call a special meeting for May 6, 1999, at which it would review its notes and decide whether the Facility was in compliance with the regulations, thus warranting approval.
24. At its special meeting on May 6, 1999, the Commission voted to approve the Application.
25. Sprint's system was erected and is currently in operation.
26. The Option & Land Lease document identified as item E35 in the Return of Record is the lease agreement for that portion of the Fire Department's property on which the defendant, SBA, has constructed the telecommunications tower.
27. The telecommunication tower is located on the 60-foot by 60-foot area leased to SBA.
*213 Essentially, the only fact in dispute is whether the Fire House was "dedicated to a municipal use" (which may actually be a mixed question of fact and law).

The Law
Plaintiffs maintain that the Zoning Regulation § 724.5d,[2] relied upon by the Commission, violates the uniformity requirements of Conn.Gen.Stat. § 8-2.[3] Section 724.5d of the Zoning Regulations requires that in all residential zones, a cell tower must be located on its own separate lot, "except on property dedicated to a municipal use." Plaintiffs argue that to the extent the regulations allow the erection of a cell tower at the Fire House on a 60 by 60 foot lot, they are not uniform throughout the R40 zoning districts because the regulations otherwise require R40 lots to have a minimum size of 40,000 square feet.
Plaintiff cites no authority for the proposition that a permissive regulation could violate the State's Uniformity Rule. Connecticut Supreme Court cases have firmly established the discretion of a Zoning Commission when it acts in a legislative capacity amending zoning regulations. See, e.g., Summ v. Zoning Commission of Town of Ridgefield, 150 Conn. 79, 89, 186 A.2d 160 (1962).
The Courts must not, and legally cannot, substitute their discretion for the wide and liberal discretion enjoyed by zoning agencies.
Id. Moreover, this section 724.5d is consistent with the general use zoning regulation, which exempts community facilities, including public buildings and emergency services, from the one-use-per-lot rule. Zoning Regulations §§ 401, 403.2.
Plaintiffs maintain that the Fire Department property is not exclusively dedicated to a municipal use. The regulation is clear and unambiguous that the Fire House, which provides emergency services, is community facility and certainly falls within the ambit of a municipal use. Further, the tower itself serves a municipal purpose by providing wireless coverage for contacting emergency services. The Fire House is dedicated to emergency services and the telecommunications tower is available for the Town's emergency services antennas. In addition, the leasing of the space for the tower provides rental income to the Fire Department, thereby, defraying its costs. Thus, we find that the Fire Department's property is dedicated to a municipal use and is exempt from the single use requirement of the zoning regulations.
The tower itself serves much of the public in the same fashion that telephone poles and lines do. As the use of wireless telephones becomes more and more common, it is important that zoning regulations keep pace with evolutionary demands of the telecommunications industry. As the Connecticut Supreme Court noted nearly thirty years ago in the case of Luery v. Zoning Board, 150 Conn. 136, 145, 187 A.2d 247 (1962):

*214 Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment.
See also Protect Hamden/North Haven from Excessive Traffic and Pollution, Inc. v. Planning & Zoning Commission of Town of Hamden, 220 Conn. 527, 543-44, 600 A.2d 757 (1991) (citing Luery).
The Telecommunications Act, 47 U.S.C. § 332(c)(7)(A), preserves all local zoning authority over decisions regarding the placement, construction, and modification of personal wireless service facilities, subject only to certain limitations set forth in subsection (B). See Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 639-40 (2d Cir. 1999). Section 332(c)(7)(B)(ii) requires that a denial by a zoning commission of an application for a wireless facility must be supported by substantial evidence. Given the record in this case, the Commission had little alternative but to approve the application for construction of a cell tower at the Fire House.
Plaintiffs further argue that municipal property can be exempted from regulations only by a town ordinance and not by the zoning commission. If that were true, municipal property would require no zoning application or action by the Commission and, therefore, there would be nothing to appeal.
Plaintiffs further argue that the Commission did not have jurisdiction to approve the facility. Rather, they assert that exclusive jurisdiction lies with the Connecticut Siting Council. In a recent decision, SBA Communications, Inc. v. Zoning Commission of the Town of Franklin, No. 3:00CV810(AHN), slip op. at 6-8 (D.Conn. July 17, 2001) (Nevas, D.J.), this Court drew a distinction between PCS services and cellular services. The Court held that, although the Siting Council had exclusive jurisdiction over cellular services, it did not have exclusive jurisdiction pursuant to Conn.Gen.Stat. § 16-50i(a) over PCS facilities. Thus, we reject plaintiffs' argument that exclusive jurisdiction lies with the Siting Council.
Moreover, we find that the regulation at issue was a proper exercise of the Commission's legislative powers. The Commission had jurisdiction from the filing of the application until this appeal was filed.
Plaintiffs raise other arguments which we have considered and find to be equally unavailing.[4]
We therefore DENY the plaintiffs' motion [Doc. #50] and we GRANT the defendants' motion [Doc. #52] in all respects.
The action is dismissed.
SO ORDERED.
NOTES
[1] That contention, which also appeared in an amended complaint filed after removal, has not been pursued. In any event, it is a frivolous claim since those sections concern the powers of the Secretary of Agriculture and do not provide for a private right of action and have no bearing on this case.
[2] Section 724.5d provides as follows:

In the C [Commercial], HC [Highway Commercial], OR [Office/Research] and I [Industrial] Districts, the Communications Tower use shall be allowed on the same lot as other uses provided all the requirements of Section 500 are met. In the R40, R60, and R80 Districts, except on property dedicated to a municipal use, the Communications Tower use shall not be allowed on the same lot with other uses.
[3] Section 8-2, Conn.Gen.Stat., gives the Commission the authority to regulate the "erection, construction, reconstruction, alteration or use of buildings or structures and the use of land." It further provides that

[a]ll such [zoning] regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district....
[4] Plaintiffs contends that a one-hour trial is necessary, without indicating what evidence would be offered at that trial. Since this is an appeal from an administrative ruling, absent exceptional circumstances, which have not been shown, we are confined to the administrative record.